1  David W. Hall (SBN 274921)
   dhall@hedinhall.com
2  Frank S. Hedin (SBN 291289)
   fhedin@hedinhall.com
3  Hedin Hall llp
   Four Embarcadero Center, Suite 1400
4  San Francisco, California 94111
   Telephone: (415) 766-3534
5  Facsimile: (415) 402-0058

6  *Counsel for Plaintiff*

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10 SHARON MOTLEY, individually and on behalf
   of all others similarly situated,              Case No. _____
11
                Plaintiff,                         CLASS ACTION COMPLAINT
12
   v.                                              (JURY TRIAL DEMANDED)
13
   CONTEXTLOGIC, INC.,
14
                Defendant.
15

16      Plaintiff Sharon Motley, individually and on behalf of all others similarly situated,

17 complains and alleges as follows based on personal knowledge as to herself, on the investigation

18 of her counsel and the advice and consultation of certain third-party agents as to technical

19 matters, and on information and belief as to all other matters:

20                            **NATURE OF ACTION**

21      1.      Plaintiff brings this action for legal and equitable remedies resulting from the illegal

22 actions of ContextLogic, Inc., in negligently, knowingly, or willfully transmitting SMS text

23 messages *en masse* to Plaintiff's cellular telephone and the cellular telephones of thousands of

24 other individuals across the country, without prior "express written consent" within the meaning

25 of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

26                          **JURISDICTION AND VENUE**

27      2.      This Court has original jurisdiction over this putative class action lawsuit pursuant

28 to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3.      Personal jurisdiction and venue are proper in this district because Defendant is headquartered in this district.

**PARTIES**

4.      Plaintiff Sharon Motley is, and at all times mentioned herein was, an individual and a "person" as defined by 47 U.S.C. § 153(10) and a citizen and resident of Montgomery, Alabama.

5.      Defendant ContextLogic, Inc. is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).  Defendant is, and at all times mentioned herein was, an internet marketing company headquartered at One Sansome Street, 40th Floor, San Francisco, California, 94104.  Defendant operates several e-commerce websites, including without limitation the websites located at Wish.com and all subdomains thereto.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

6.      In 1991, Congress enacted the TCPA to address consumer complaints regarding certain abusive telemarketing practices.  The TCPA prohibits, inter alia, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called.  And in the case of calls or text messages that constitute "advertisements" or "telemarketing", as defined by applicable regulations, the TCPA requires the "prior express <u>written</u> consent" of the called party before initiating such calls or texts via an autodialer.

7.      According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because such transmissions are a greater nuisance and invasion of privacy than live solicitation calls and receiving and addressing such calls and texts can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

8.      One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones.  According to

a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to user's cell phones."[1]

9.     SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received.  Because wireless telephones are carried on their owner's person, SMS text messages are received virtually anywhere in the world.

10.     Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

11.     Moreover, the transmission of an unsolicited SMS text message to a cellular device is distracting and aggravating to the recipient; intrudes upon the recipient's seclusion; wastes a quantifiable amount of available data on the recipient's cellular device, thereby reducing its data storage capacity; temporarily reduces the available computing power and application processing speed on the recipient's device; diminishes the available battery power, and thus shortens the battery life, of the recipient's cellular device; and requires expending a quantifiable amount of energy (i.e., electricity) to recoup the battery power lost as a result of receiving such a message.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

12.     Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (334) ***-6672 (the "6672 Number").  The 6672 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

---

[1]     Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited April 6, 2018).

CLASS ACTION COMPLAINT

13.    Between early February 2018 and the date of the filing of this Class Action Complaint, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, numerous SMS text message advertisements to the 6672 Number without Plaintiff's express consent, written or otherwise, including without limitation the messages depicted in the following screenshots taken from Plaintiff's cellular device:

Tue, Feb 6, 2018 3:45 AM

This Valentine's Day 🌹 grab something special for your loved one. www.wish.com/x/ff854ae

Fri, Mar 2, 2018 2:14 PM

Try something new. 🌻 See the top fash-ion trends for 2018! www.wish.com/x/9e55860

Fri, Mar 9, 2018 3:37 PM

Don't get pinched. 🍀 St. Patrick's day is just 2 weeks away. www.wish.com/x/d8f3b4a

14.    The source of each of the SMS text messages sent by Defendant to the 6672 Number was "89293", which is an SMS short code leased by Defendant or Defendant's agent(s) or affiliate(s) and is used for operating Defendant's text message marketing program.

15.    Because Plaintiff is alerted by her cellular device, by auditory or visual means, whenever she receives an SMS text message sent to the 6672 Number, each unsolicited SMS text message that Defendant transmitted to the 6672 Number invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion.

16.    Plaintiff became distracted and aggravated as a result of receiving each of Defendant's SMS text messages.

17.     All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to Plaintiff at the 6672 Number occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

18.     Specifically, Defendant utilized an "automated telephone dialing system" to transmit the aforementioned text messages to the 6672 Number because such messages were sent from "89293", which is a short code telephone number used to message consumers *en masse*; because Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion and without human intervention.  And indeed, Defendant transmitted the text messages at issue in this case to Plaintiff and all other putative class members in an automated fashion and without human intervention, with hardware and software that stores, produces and dials random or sequential numbers and/or receives and stores lists of telephone numbers.

19.     As of April 6, 2018, the publicly-available "Terms of Use" page on Defendant's e-commerce website, Wish.com, states that Defendant sends "mobile texts and alerts about Wish products and services" via "recurring autodialed marketing texts from or on behalf of" Wish.com.[2] Defendant's website also states that "[s]tandard data and message rates" will be charged to the recipients of such messages, including to Plaintiff and member of the putative class.[3]

20.     Numerous consumers have received substantially similar unsolicited mass marketing text messages sent by Defendant from the "89293" short code, as demonstrated by the following complaints posted at www.shortcodes.org (specifically at http://shortcodes.org/uncategorized/89293-short-code/), as of April 6, 2018:

---

[2]     "Terms of Use," Wish.com, available at https://www.wish.com/terms (last accessed April 6, 2018).

[3]     "Privacy Policy," Wish.com, available at https://www.wish.com/privacy_policy (last accessed April 6, 2018).



21.    The complained of SMS messages to the 6672 Number constituted telephone solicitations as defined by 47 U.S.C. § 227(a)(4) and/or advertisements as defined by 47 C.F.R. 64.1200(f)(1).  Indeed, on the publicly-accessible Wish.com website, Defendant characterizes the

text messages it sends as "promotional communications . . . about [Wish.com], about [its] products and/or services," and states that it sends such messages for "marketing purposes."[4]

22. Plaintiff never provided "prior express written consent" or any other form of consent allowing Defendant or any affiliate, subsidiary, or agent of Defendant to transmit SMS text messages to the 6672 Number by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

## CLASS ALLEGATIONS

23. Class Definition. Plaintiff brings this civil class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as follows:

> All persons within the United States who received one or more SMS text message(s) from Contextlogic, Inc. or an affiliate, subsidiary, or agent of Contextlogic, Inc. and who did not provide Contextlogic, Inc. prior express written consent to receive such SMS text message(s).

24. Defendant, its employees and agents are excluded from the Class.

25. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

26. Plaintiff and all Class members have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

27. This Class Action Complaint seeks injunctive relief and monetary damages.

28. This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

---

[4] "Privacy Policy," Wish.com, available at https://www.wish.com/privacy_policy (last accessed April 6, 2018) (emphasis added).

CLASS ACTION COMPLAINT

29.     Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

30.     <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to tens of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

31.     <u>Typicality</u>. Plaintiff received at least one SMS text message through the use of an automatic telephone dialing system, without providing her prior express written consent to Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interest is consistent with and not antagonistic to those of the other Class members she seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

32.     <u>Adequacy</u>. As Class representative, the Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

33.     <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action.  Counsel are experienced in handling complex class action claims, in particular claims under the TCPA and other data privacy and consumer protection statutes.

34.   <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

a) Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;

b) Whether such text messages were sent using an "automatic telephone dialing system";

c) Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8) to send the text messages complained of, assuming such an affirmative defense is raised;

d) Whether the complained of conduct was knowing or willful;

e) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

35.   <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the

resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones.  The Class members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular telephone providers.

36.     Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

37.     Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### NEGLIGENT VIOLATION OF THE TELEPHONE
### CONSUMER PROTECTION ACT
### (47 U.S.C. § 227)

38.     Plaintiff incorporates by reference paragraphs 1-37 of this Class Action Complaint as if fully stated herein.

39.     The foregoing acts and omissions constitute negligent violations of the TCPA by Defendant, including but not limited to violations of each of the above-cited provisions of 47 U.S.C. § 227.

40.     As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

41.     As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, an award of $500.00 in statutory damages for each and every text message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

42.     Plaintiff and Class members also seek an award of attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**KNOWING AND/OR WILLFUL VIOLATION OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**(47 U.S.C. § 227)**

43.     Plaintiff incorporates by reference paragraphs 1-37 of this Class Action Complaint as if fully stated herein.

44.     The foregoing acts and omissions by Defendant constitute knowing or willful violations of the TCPA, including but not limited to violations of each of the above-cited provisions of 47 U.S.C. § 227.

45.     As a result of alleged knowing or willful violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

46.     As a result of Defendant's knowing or willful violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, treble damages of up to $1,500.00 for each and every text message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

47.     Plaintiff and Class members also seek an award of attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment in her favor, as follows:

1.     Injunctive relief prohibiting such violations of the TCPA in the future;

2.      As a result of the alleged negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each class member $500.00 in statutory damages for each and every text message that violated the TCPA;

3.      As a result of the alleged willful or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each class member treble damages, as provided by the statute, of up to $1,500.00 for each and every text message that violated the TCPA;

4.      An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

5.      An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firm representing Plaintiff as counsel for the Class.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated:  April 6, 2018                                Respectfully submitted,

By: s/ David W. Hall

HEDIN HALL LLP

David W. Hall (SBN 274921)
dhall@hedinhall.com
Frank S. Hedin (SBN 291289)
fhedin@hedinhall.com
Four Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Counsel for Plaintiff*

- 12 -
CLASS ACTION COMPLAINT