David W. Hall (SBN 274921)
dhall@hedinhall.com
Frank S. Hedin (SBN 291289)
fhedin@hedinhall.com
Hedin Hedin llp
Four Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON MOTLEY, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>v.<br><br>CONTEXTLOGIC, INC.,<br><br>             Defendant. | Case No. 3:18-cv-02117-JD<br><br>Judge: Hon. James Donato<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Date: August 23, 2018<br>Time: 10:00 a.m.<br>Place: Courtroom 11 |

# TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................................... 1

II.   BACKGROUND FACTS............................................................................................ 1

III.  APPLICABLE LEGAL STANDARD ........................................................................ 6

IV.   ARGUMENT ............................................................................................................ 6

   A.   No Agreement Was Ever Entered into Between Plaintiff and Defendant ............................ 7

     1.   Plaintiff Did Not Assent to the Terms of Service at the Time She Enrolled in Defendant's Website on January 19, 2017....................................................................7

     2.   Plaintiff Never Assented to the Terms of Service At Any Time After Her Initial Enrollment ................................................................................................ 8

   B.   Even If Plaintiff Assented to the Terms of Service, the Arbitration Provision in the Terms of Service Is Unconscionable and thus Unenforceable as a Matter of Law .............................13

V.    CONCLUSION ......................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Amer. Aero. Corp. v. Grand Cen. Aircraft Co.,*
    155 Cal. App. 2d 69 (Cal. 1957) --------------------------------------------------------------- 9

4

5

*Armendariz v. Found. Health Psychcare Servs, Inc.,*
    24 Cal. 4th 83 (2000) ----------------------------------------------------------------------- 14, 15

6

*Ashland Chem. Co. v. Provence,*
    129 Cal. App. 3d 790 (1982) ----------------------------------------------------------------- 7

7

8

*AT&T Techs., Inc. v. Comms. Workers,*
    475 U.S. 643 (1986) -------------------------------------------------------------------------- 6

9

10

*Beltran v. InterExchange,*
    2017 WL 4418711 (D. Colo. 2017) -------------------------------------------------------- 14

11

*Berkson v. Gogo LLC,*
    97 F. Supp. 3d 359 (E.D.N.Y. 2015) ------------------------------------------------------ 11

12

13

*Capili v. Finish Line, Inc.,*
    116 F. Supp. 3d 1000 (N.D. Cal. 2015) --------------------------------------------------- 15

14

15

*Castillo v. Lowes HIW, Inc.,*
    2013 WL 12143002 (N.D. Cal. 2013) ----------------------------------------------------- 6

16

*Chavarria v. Ralphs Grocery Co.,*
    733 F.3d 916 (9th Cir. 2013) ---------------------------------------------------------------- 14

17

18

*Colvin v. NASDAQ OMX Group, Inc.,*
    2015 WL 6735292 (N.D. Cal. 2015) -------------------------------------------------- 13, 15

19

20

*Cory v. Golden State Bank,*
    95 Cal. App. 3d 360 (Cal. 1979) ------------------------------------------------------------ 9

21

22

*Cullinane v. Uber Technoogies, Inc.,*
    2018 WL 3099388 (1st Cir. 2018) --------------------------------------------------------- 11

23

*Erickson v. Nebraska Machinery Company,*
    2015 WL 4089849 (N.D. Cal. 2015) ------------------------------------------------------- 2

24

25

*Fitz v. NCR Corp.,*
    118 Cal. App. 4th 702 (2004) --------------------------------------------------------------- 15

26

27

*Frst Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995) -------------------------------------------------------------------------- 6

28

ii

*Hernandez v. Burger*,
　102 Cal. App. 3d 795 (1980)-------------------------------------------------------------- 7

*India Paint Co. v. United Steel Prod. Corp.*,
　123 Cal. App. 2d 597 (Cal. 1954)------------------------------------------------------- 9

*Ingle v. Circuit City Stores, Inc.*,
　328 F.3d 1165 (9th Cir. 2003) --------------------------------------------------------15

*Knutson v. Sirius XM Radio Inc.*,
　771 F.3d 559 (9th Cir. 2014)----------------------------------------------------------12

*Loomis v. Cornish*,
　836 F.3d 991 (9th Cir.  2016)---------------------------------------------------------- 4

*Nguyen v. Barnes & Noble, Inc.*,
　763 F.3d 1171 (9th Cir. 2014) ----------------------------------------------------9, 10, 13

*Nicosia v. Amazon.com, Inc.*,
　834 F.3d 220 (2d Cir. 2016) --------------------------------------------------------9, 11

*Norcia v. Samsung Tel. America, LLC*,
　845 F.3d 1279 (9th Cir. 2017)-------------------------------------------------------- 6

*Norcia v. Samsung Telecommunications America, LLC*,
　2014 WL 465233 (N.D. Cal. 2014)-------------------------------------------------- 9

*Pokorny v. Quixtar, Inc.*,
　601 F.3d 987 (9th Cir. 2010)----------------------------------------------------------13

*Porreco v. Red Top RV Center*,
　216 Cal. App. 3d 113 (1989)----------------------------------------------------- 7, 9

*Sanford v. MemberWorks, Inc.*,
　483 F.3d 956 (9th Cir. 2007)---------------------------------------------------------- 6

*Savetsky v. Pre-Paid Legal Services, Inc.*,
　2015 WL 604767 (N.D. Cal. 2015)-------------------------------------------------- 9

*Schnabel v. Trilegiant Corp.*,
　697 F.3d 115 (2d Cir. 2012) ---------------------------------------------------------- 9

*Sgouros v. TransUnion Corp.*,
　817 F.3d 1029 (7th Cir. 2016)--------------------------------------------------------- 9

*Sonic-Calabasas A, Inc. v. Moreno*, 5
　7 Cal. 4th 1109 (2013) --------------------------------------------------------------13

iii

*Specht v. Netscape Communications Corp.*,
   306 F.3d 17 (2d Cir. 2002) ------------------------------------------------------------------10

*Stover-Davis v. Aetna Life Ins. Co.*,
   2016 WL 2756848 (E.D. Cal. 2016) ------------------------------------------------------ 4

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*,
   925 F.2d 1136 (9th Cir. 1991) ------------------------------------------------------ 6, 7

*U.S. v. Bennett*,
   363 F.3d 947 (9th Cir. 2004) ------------------------------------------------------------ 4

*Vargas v. Delivery Outsourcing, LLC*,
   2016 WL 94611 (N.D. Cal. 2016) ---------------------------------------------------------14

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
   25 Cal. App. 3d 987 (Cal. 1972) ----------------------------------------------------------- 9

**<u>Statutes</u>**

9 U.S.C. §§ 1-16---------------------------------------------------------------------------- - 6

42 U.S.C. 227 ------------------------------------------------------------------------------- 1

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

1    Plaintiff Sharon Motley hereby submits this response in opposition to the motion to compel

2 arbitration and stay litigation filed by defendant ContextLogic, Inc. (ECF No. 17 ("Motion" or

3 "Mtn.")).

## I.    INTRODUCTION

    To market its discount website, Defendant bombarded Plaintiff and consumers nationwide with autodialed text message advertisements, without obtaining anyone's prior express written consent, in clear violation Telephone Consumer Protection Act ("TCPA"), 42 U.S.C. 227.   In the Motion, Defendant moves to compel arbitration of Plaintiff's individual claims, even though Plaintiff never agreed to anything with Defendant, much less an agreement to arbitrate this dispute.   The Motion is so baseless that it suggests the Defendant is simply using the Motion as a vehicle to delay this litigation, by way of the stay it hopes to obtain after it loses the Motion and attempts to takes an immediate appeal pursuant to the Federal Arbitration Act ("FAA").   This Court need not go along.

    Arbitration, a matter of contract, cannot be compelled pursuant to the FAA unless Defendant proves the existence of a valid, enforceable agreement to arbitrate.   In this case, it is undisputed that Plaintiff never entered into any agreement with Defendant when she initially enrolled in Defendant's Wish.com website in January 2017.   Defendant is thus left arguing that Plaintiff's <u>mere use of the Wish.com mobile application</u>, post enrollment, is sufficient to compel arbitration, based on a hyperlink to the "Terms of Service" (containing an arbitration provision) that appeared in fine print at the bottom of the mobile application.   Because Defendant has submitted no evidence, nor is there any, that Plaintiff ever <u>assented</u> to the "Terms of Service," the Motion should be denied.

## II.    BACKGROUND FACTS

    On January 19, 2017, Plaintiff enrolled with Defendant's Wish.com service by "signing up" on the website http://www.wish.com.  (Declaration of Sharon Motley ("Motley Decl.") ¶ 3; *see also* Correspondence from L. Mazzuchetti to F. Hedin dated June 6, 2018, attached as Exhibit "A" to the Declaration of Frank S. Hedin ("Hedin Decl."), at 1 ("According to our client's records, Ms. Motley created a Wish.com account on January 19, 2017."); Declaration of Frost Li Submitted in Support of

the Motion (ECF No. 17-1 ("Li Decl.")) ¶ 5 ("Ms. Motley first registered as a user of Wish.com in January 2017[.]").)

When Plaintiff signed up on the www.wish.com website on January 19, 2017, Plaintiff was not asked to or required to – and indeed did not – agree, consent, or otherwise assent to the terms of any agreement or contract with Defendant, including any version of the Defendant's "Terms of Service." (Motley Decl. ¶ 4.). True and correct, and judicially noticeable[1], screenshots of the two-step Wish.com "signup flow" that existed on January 2017 are attached as Composite Exhibits "B" and "C" to the Hedin Decl., the second step of which is shown in pertinent part below:



(Hedin Decl., Comp. Ex. B at 2 (second step of January 26, 2017 sign up flow); *see also id.*, Comp. Ex. C at 2 (January 5, 2017 screenshot reflecting materially identical second step of sign up flow).) Thus, as shown above, consistent with Plaintiff's declaration, Plaintiff was not presented with, let alone required to agree to, any "Terms of Service" or any other terms or conditions when enrolling in Wish.com website on January 19, 2017.[2]

---

[1]      Plaintiff respectfully requests, pursuant to Federal Rule of Evidence 201, that the Court take judicial notice of the contents of the webpages depicted herein and attached to the Hedin Decl., which reflect the way in which the website http://www.wish.com/ existed on January 5, 2017 and January 26, 2017, the two dates closest to January 19, 2017 for which archived copies are available on the Wayback Machine Internet Archive. The URLs at which the archived versions of the pages may be accessed are as follows: https://web.archive.org/web/20170105171421/https://www.wish.com/ (January 5, 2017) and https://web.archive.org/web/20170126162226/https://www.wish.com/ (January 26, 2017). *See Erickson v. Nebraska Machinery Company*, 2015 WL 4089849, *1 n.1 (N.D. Cal. 2015) (Donato, J.).

[2]      The signup flow depicted in the screenshots accompanying the Hedin Decl. was the only way to enroll in Wish.com on the www.wish.com website on January 19, 2017. As the archived versions of the website demonstrate, the sign up/login box reflected in the first step of the signup flow popped up immediately upon visiting the www.wish.com website, and no other part of the Wish.com website would have been accessible until the individual visiting the website either signed up or logged in using an existing, previously-created account, in the manner depicted in the screenshots accompanying the Hedin Decl. (Hedin Decl. ¶¶ 4-5.)

1

2

        According to Defendant's employee Ms. Frost Li, "[o]n September 8, 2017, Ms. Motley

3

logged into the Wish.com shopping service by providing her e-mail address and password through

4

the login screen on the Wish.com Google Play app." (Li Decl. ¶ 6.) The following image of the login

5

screen that Plaintiff purportedly accessed on the Wish.com Google Play app on September 8, 2017 is

attached to Ms. Li's declaration:

6

7

8

9

10



11

12

13

14

15

16

(*Id.*, Ex. A.) As the screenshot demonstrates, the login page that Plaintiff purportedly accessed on

17

September 8, 2017 using the Wish.com Google Play app did not ask or require Plaintiff to agree or

18

otherwise assent to the Terms of Service.

19

        Ms. Li further testifies that "[o]n October 26, 2017, Ms. Motley navigated through an 'Order

20

History' screen." (*Id.* ¶ 8.)  The first two of the three images[3] accompanying Ms. Li's declaration

21

pertaining to the "Order History" screen that she says Plaintiff navigated through are depicted below:

22

23

24

25

26

27

---

28   [3]    The third image depicts a portion of the Terms of Service that would purportedly have displayed to an individual who clicked the hyperlink in the sentence stating "[c]lick **here** for more details" at the bottom of the first two images.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION



(*Id.*, Ex. B at 1.)  As the screenshot demonstrates, the "Order History" page that Ms. Li states Plaintiff accessed on October 26, 2017 did not ask or require the individual viewing the screen to agree or otherwise assent to the Terms of Service.

According to Ms. Li, "ContextLogic's records reflect that the checkbox displayed in the first two screenshots of Exhibit "B" was selected by Ms. Motley on October 26, 2017, when she navigated through the 'Order History' screen by pressing the 'Next' button."  (*Id.* 10.)  However, the statement is not supported by a shred of competent evidence, as neither Ms. Li in her declaration nor Defendant in the Motion submits any such record reflecting that Plaintiff "selected . . . the checkbox."[4]  Thus, Ms. Li's statement that Plaintiff "navigated through" this screen is plainly inadmissible and should not be considered by the Court.[5]

---

[4]     In fact, contrary to Ms. Li's statement that there is a "checkbox displayed in the first two screenshots of Exhibit B" (*see id.*), there is plainly only a checkbox displayed in the first screenshot of Exhibit B – leaving Plaintiff, and the Court, guessing whether there was even a checkbox at all on that page or whether the page instead simply forcibly enrolled the visitor into the text program as the second screenshot appears to reflect occurred.

[5]     The Court should not consider the statements made by Mr. Frost concerning records that Defendant purports to possess, but failed to submit to the Court, concerning Plaintiff's interactions with Wish.com.  Such statements are inadmissible hearsay and violate the best evidence rule.  *See See, e.g., Stover-Davis v. Aetna Life Ins. Co.*, 2016 WL 2756848, t *3 (E.D. Cal. 2016) ("On motion to compel arbitration, the court applies a standard similar to summary judgment . . . [thus] the material cited to support to dispute a fact [must] be presented in a form that would be admissible in evidence.") (citing Fed. R. Civ. P. 56(c)); *see also, e.g., Loomis v. Cornish*, 836 F.3d 991, 996-97 (9th Cir. 2016) (court "properly rejected" "affidavit [] not based on personal knowledge [that instead] relied on inadmissible hearsay . . ."); *U.S. v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) (best evidence rule applies where, as here, "a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself . . . proponents of computer-produced evidence [] founder on the best evidence rule by presenting [] testimony based on  . . . review of computer printouts without actually introducing the printouts themselves . . ."); *cf.* Fed. R. Civ. P. 56(c) ("affidavit or declaration used to support . . . motion must be made on personal knowledge [and] set out facts that would be admissible in evidence . . .").

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

1
2
3
4
5
6
7
8

In any event, Ms. Li's statement is also incorrect. As Plaintiff states in her declaration accompanying this response, she was never presented with any of the screenshots depicted in Exhibit 'B' to Ms. Li's declaration, or any other prompt that asked her to check a box concerning text messages, while using Defendant's mobile application or website, and thus clearly did not check the checkbox depicted in the first screenshot in Exhibit "B" accompanying Ms. Li's declaration.[6] (*See* Motley Decl. ¶¶ 7-9.) Furthermore, Plaintiff is certain she never agreed, in any way, to be bound by the Terms of Service, any arbitration provision, or any other agreement or contractual terms with Defendant.  (*See id.* ¶ 6.)

9
10
11
12
13

Finally, Ms. Li testifies that "[o]n March 27, 2018, Ms. Motley again logged into the Wish.com shopping service by providing her e-mail address and password through the login screen on the Wish.com Google Play app." (*Id.* ¶ 11.)  Images of the login screens for the Wish.com Google Play app that Plaintiff purportedly accessed on March 27, 2018 are attached to Ms. Li's declaration and depicted below:

14
15
16
17
18
19
20
21



22
23
24

(*Id.*, Ex. C at 1.)  As the screenshots demonstrate, the login pages that Plaintiff purportedly accessed on March 27, 2018 using the Wish.com Google Play app did not ask or require Plaintiff to agree or otherwise assent to the Terms of Service.

25
26

27
28

[6]     Nor would a check in the checkbox evidence a visitor's "prior express written consent," within the meaning of applicable TCPA regulations, to receive autodialed advertisements.  Although the issue of consent is not presently before the Court, it is certainly susceptible to class-wide resolution and, in Plaintiff's view, will clearly resolve in her and the proposed class's favor.

### III.    APPLICABLE LEGAL STANDARD

"It is axiomatic that '[a]rbitration is a matter of contract,'" and thus "'a party cannot be required to submit any dispute which he has not agreed so to submit.'" *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (quoting *AT&T Techs., Inc. v. Comms. Workers*, 475 U.S. 643, 648 (1986)).  As such, "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court," the party moving to compel arbitration must first prove the existence of "an express, unequivocal agreement to that effect."  *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., In*c., 925 F.2d 1136, 1140-41 (9th Cir. 1991).

Thus, the "liberal federal policy" in favor of arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, only applies if the party moving to compel arbitration first establishes the existence of a valid, enforceable agreement to arbitrate.  However, the FAA's "liberal federal policy regarding the scope of arbitrable issues is inapposite when the question is whether a particular party is bound by the arbitration agreement." *Norcia v. Samsung Tel. America, LLC*, 845 F.3d 1279, 1291 (9th Cir. 2017).

Where a genuine issue of fact is found as to the existence of a valid, enforceable agreement to arbitrate, the non-movant may demand a trial by jury on the question in the brief opposing arbitration pursuant to Section 4 of the FAA, 9 U.S.C. § 4.  *See, e.g., Castillo v. Lowes HIW, Inc.*, 2013 WL 12143002, at *3-*4 (N.D. Cal. 2013) (jury trial demand properly made in "opposition to Defendant's motion to compel arbitration or prior to the date the opposition brief was due").

### IV.    ARGUMENT

The Motion fails to establish the existence of any agreement at all between Plaintiff and Defendant. Accordingly, the FAA's presumption in favor of arbitration is inapposite, and Defendant cannot compel Plaintiff to arbitrate her claims.  Moreover, even if Plaintiff somehow assented to the Terms of Service as the Motion claims, the subject arbitration provision is  unconscionable and thus unenforceable.  The Motion should be denied.

### A.  No Agreement Was Ever Entered into Between Plaintiff and Defendant

Whether a contract exists is determined according to "ordinary state-law principles that govern the formation of contracts." *Frst Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Under "basic principles of California contract law," the "essential elements for a contract are (1) 'parties capable of contracting;' (2) their 'consent;' (3) a 'lawful object;' and (4) 'sufficient cause or consideration.'" *Norcia*, 845 F.3d at 1283 (quoting Cal. Civ. Code Section 1550).[7]  Of "paramount consideration" to the analysis is "the parties' objective intention at the time of contracting." *Porreco v. Red Top RV Center,* 216 Cal.App.3d 113, 119 (1989).

In determining whether Defendant has proved these essential elements, "[t]he district court . . . should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist.,* 925 F.2d at 1140-41.  "If there is doubt as to whether such an agreement exists," Defendant has failed to carry its burden and thus arbitration must be denied.  *Id.*

As discussed below, the Motion fails to establish the existence of a binding agreement to arbitrate between Plaintiff and Defendant.  Defendant submits no evidence that Plaintiff agreed to anything, let alone the Terms of Service, at the time of her enrollment in Defendant's website in January 2017 – and in fact, the evidence conclusively demonstrates that she agreed to nothing during her enrollment.  The evidence submitted by Defendant shows merely that Plaintiff used the Wish.com mobile application on September 8, 2017, October 26, 2017, and March 27, 2018, three innocuous interactions which uniformly fail as a matter of law to establish Plaintiff's assent to the Terms of Service or any agreement to arbitrate.  The Motion should be denied.

### 1.  Plaintiff Did Not Assent to the Terms of Service at the Time She Enrolled in Defendant's Website on January 19, 2017

First, Defendant does not even attempt to demonstrate that Plaintiff "objective[ly] inten[ded]" to agree to the Terms of Service during her initial enrollment on January 19, 2017 – the "paramount

---

[7]      Absent an enforceable choice-of-law agreement, California courts apply a "governmental interest approach." *Ashland Chem. Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982). Although Plaintiff's claims arise from text messages she received from Defendant in Alabama, *see* ECF No. 1 at 2, on these basic principles of contact formation, Alabama and California law do not appear to conflict; thus, the law of the forum, California, applies. *See, e.g., Hernandez v. Burger*, 102 Cal. App. 3d 795, 801 (1980).

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

consideration" for the Court in deciding the Motion. *Porreco,* 216 Cal. App. 3d at 119.  Defendant submits no evidence of any agreement to enter into the Terms of Service in January 2017.   No evidence of its purported terms or that such terms included an arbitration provision.  No evidence of how any of any such terms were presented or whether and how visitors were notified of such terms.  No evidence of any website or sign-up flow in place at the time.  And Defendant certainly submits no evidence that Plaintiff herself ever actually proceeded through any such sign-up flow and affirmatively entered into an agreement to arbitrate with Defendant.  (*See* Mtn. at 1-7 (no evidence whatsoever related to January 2017 sign-up).)

The truth is that Plaintiff did not agree to anything when she enrolled in Wish.com in January 2017.  Indeed, the following screenshot, take from an archived version of the Wish.com homepage that existed in January 2017, reflects the sum total of the information requested by Defendant, and thus provided by Plaintiff, when she signed up on January 19, 2017:



(*See* Hedin Decl., Comp. Ex. B, at 2; *id.* at Comp. Ex. C, at 2.) Thus, the evidence demonstrates that Plaintiff was in fact never presented with any terms, notified of any terms, or provided an opportunity to review any terms, much less that she assented to any terms on January 19, 2017.  Such a "nothing wrap" enrollment process conclusively demonstrates that Plaintiff assented to no agreement at all when she enrolled on January 19, 2017.

### 2. Plaintiff Never Assented to the Terms of Service At Any Time After Her Initial Enrollment

The Motion also fails to demonstrate Plaintiff's assent to the Terms of Service at any time after her initial enrollment on January 19, 2017, including on any of the three occasions (September 8, 2017, October 26, 2017, and March 27, 2018) relied upon in the Motion.

As a threshold matter, the mere use of a mobile application or website displaying a hyperlink an agreement in fine print to is plainly insufficient, by itself, to bind the user to the hyperlinked agreement, particularly where, as here, the user never agreed to be bound by any terms or conditions during the initial enrollment process on the subject website. *See, e.g., Norcia v. Samsung Telecommunications America, LLC*, 2014 WL 4652332, at *9 (N.D. Cal. 2014) (rejecting argument that use of Defendant's "webpage," which "contained links to . . . the arbitration provision," could bind Plaintiff in absence of initial contract), *aff'd* 845 F.3d at 1283; *Savetsky v. Pre-Paid Legal Services, Inc.*, 2015 WL 604767, *5 (N.D. Cal. 2015) (holding no assent by use of website because no clear notice that its terms could "be adopted through" mere use of the website).[8]

"While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Thus, companies like Defendant that seek to enforce the terms of an online take-it-or-leave-it contract bear the burden of establishing, on undisputed facts, that the provisions of the contract were clearly communicated and accepted. *See Nguyen*, 763 F.3d at 1179 (explaining that the "onus must be on website owners to put users on notice of the terms to which they wish to bind consumers," for "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound"). Determining "whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and whether the circumstances support the assumption that the purchaser receives reasonable notice

---

[8]     To the extent Defendant is arguing that Plaintiff is somehow bound by revised or modified versions of the Terms of Service, issued by Defendant after Plaintiff's initial enrollment with Wish.com in January 2017, this argument fails for several reasons. First, only parties to an agreement can be bound by subsequent modifications to an agreement, and even then, in order for subsequent modifications to be binding, the original agreement must have put the other party on notice of the possibility of subsequent binding modifications. *See Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (Cal. 1972); *see also Porreco*, 216 Cal. App. 3d at 119 (under California law, contract formation is governed by "[t]he mutual intention of the parties at the time the contract is formed"); *see also, e.g., Schnabel v. Trilegiant Corp.*, 697 F.3d 115, 126 (2d Cir. 2012) (citing *Windsor Mills* and denying defendant's motion to compel arbitration, finding subsequently-added terms nonbinding because there was nothing in the "prior relationship between the parties that would have suggested that terms sent . . . after the initial enrollment were to become part of the contract"); *cf., e.g., Cory v. Golden State Bank*, 95 Cal.App.3d 360, 367 (Cal. 1979); *India Paint Co. v. United Steel Prod. Corp.*, 123 Cal. App. 2d 597, 608-609 (Cal. 1954); *Amer. Aero. Corp. v. Grand Cen. Aircraft Co.*, 155 Cal. App. 2d 69, 79 (Cal. 1957). In this case, Plaintiff was never a party to the Terms of Service, and thus could never have become bound by any revisions to the Terms of Service. Moreover, even if Plaintiff had entered into the Terms of Service in January 2017, Defendant presents no evidence that Plaintiff was notified at that time that she was entering a contract subject to undisclosed, subsequent terms that could, without warning, be materially revised each time she used Defendant's website. Accordingly, any modifications Defendant made to the Terms of Service had no impact on Plaintiff whatsoever. *See Windsor Mills*, 25 Cal. App. 3d at 993.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

of those terms" is "a fact-intensive inquiry," *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034-35 (7th Cir. 2016), which "depends heavily" on "the design and content" of the relevant webpages or mobile-phone applications. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016); *see also Nguyen*, 763 F.3d at 1177-78.

In this case, the Motion should be denied because Defendant fails to establish that the Terms of Service containing the arbitration provision were ever "clearly" and effectively communicated to Plaintiff, or that she ever accepted them, merely while utilizing Defendant's mobile application (1) to sign into her account on September 8, 2017 or March 27, 2018; or (2) to check on the status of an order she had placed on October 26, 2017.

First, Defendant argues that the screenshots of sign-in screens from Defendant's mobile application, which Ms. Li says Plaintiff accessed on September 8, 2017 and March 27, 2018 to sign into her Wish.com account (*see* Li Decl., Exs. A-B), evidence Plaintiff's assent to the Terms of Service. The argument is baseless. Even assuming these sets of screenshots accurately reflect what Plaintiff saw when logging into to her Wish.com account on those dates, neither set of screenshots comes anywhere close to demonstrating Plaintiff's assent to the Terms of Service. Neither set of screenshots reflects any statement notifying or warning Plaintiff that her use of the Wish.com service would bind her to the Terms of Service. The only reference on these sets of screenshots to the "Terms of Service" is at the bottom of the page, in small, light-colored text beneath numerous larger, more prominent features. Defendant's design provides nothing flagging the existence of the terms, nor any checkbox through which users are asked to "Agree" or otherwise affirmatively indicate assent, nor any text indicating that use or any other action or inaction could possibly constitute assent, nor any instructions or notice of how one would even access or review the terms.

The Ninth Circuit and the rest of the federal judiciary is in near uniform agreement that such passive, "browsewrap" configurations fail to provide adequate notice of contractual terms and are thus incapable of establishing mutual assent to such terms, as a matter of law. *See Nguyen*, 763 F.3d at 1177-78 ("[W]here a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative

action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on - without more - is insufficient to give rise to constructive notice."); *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 29-30 (2d Cir. 2002).

Moreover, Defendant's position is further undermined by the manner in which the "Terms of Service" link is displayed on the login screens utilized by Plaintiff as reflected on the September 8, 2017 and March 27, 2018 screenshots.  On both screenshots, the "Terms of Service" link is displayed against a colored background in small, light blue font, below numerous other more prominently-displayed buttons, icons, and text.  That is not nearly sufficient to establish assent.  As numerous courts have held, hyperlinks to contractual terms "appear[ing] in smaller font" than other text on the screen, and which are "not bold, capitalized, or conspicuous in light of the whole webpage," fail to adequately notify visitors of the terms to which the hyperlinked text directs.  *See Nicosia*, 834 F.3d at 236- 37; *see also, e.g., Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 404 (E.D.N.Y. 2015) (holding a "terms of use" hyperlink "insufficient to give adequate notice" because hyperlink was "not in large font, all caps, or in bold"); *Cullinane v. Uber Technoogies, Inc.*, 2018 WL 3099388, at *7-*8 (1st Cir. 2018).  Because the design and content of Defendant's screenshots fail to provide clear and conspicuous notice of the purported contractual terms, they do not suffice to establish Plaintiff's assent.

Second, Defendant argues that the screenshot of an "order status" screen from Defendant's mobile application, which Ms. Li says Plaintiff accessed on October 13, 2017 (*see* Li Decl., Ex. C), evidences Plaintiff's assent to the Terms of Service.  This argument fails for several reasons.  For one thing, Plaintiff never even accessed such a screen.  (Motley Decl. ¶ 8.) Thus, contrary to Ms. Li's statement in her declaration, Plaintiff never checked the checkbox pertaining to text messages.[9]  (*Id.* ¶¶ 7-9.)  Moreover, even if Plaintiff had checked the box displayed on the first of the three screenshots depicted in Exhibit "C" to Ms. Li's declaration (and she did not), the check would at most reflect that Plaintiff was notified that she could "click here" to obtain more "details" concerning the "messages

---

[9]       Curiously, Ms. Li's declaration is unaccompanied by the records supposedly showing that Plaintiff checked the box.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

and data rates" applicable to any text messages sent to her by Defendant – not that Plaintiff had objectively intended to enter into the Terms of Service accessible via the "click here" link. Indeed, the screen does not even inform individuals that the "click here" link directs to the "Terms of Service," nor does it notify individuals that, by checking the box, an individual is agreeing to be bound by the Terms of Service. Thus, even in the unlikely event the Court finds that Plaintiff checked the box on the "order status" screen, that would still be plainly insufficient to establish Plaintiff's assent to the Terms of Service. *See, e.g., Savetsky*, 2015 WL 604767, *4 (denying motion to compel arbitration under similar online sign-up process because "a reasonable person could easily conclude that "More Plan Details" are simply an even fuller list of features [Defendant] offers to its members, not the member contract or additional terms and conditions.").

The Ninth Circuit's refusal to compel arbitration in *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014), pursuant to an agreement first provided to the plaintiff after he had already started using defendant's services, conclusively confirms that Plaintiff cannot be compelled to arbitrate in this case. In *Knutson*, the defendant sent the plaintiff a copy of a Customer Agreement (containing an arbitration provision) several weeks after the plaintiff had purchased a Toyota truck, which came pre-installed with defendant's Sirius XM radio service. *Knutson*, F.3d at 562. When the plaintiff subsequently began receiving unsolicited text messages from the defendant, plaintiff filed a putative class action lawsuit against the defendant for violation of the TCPA, which, in turn, predictably triggered a motion from the defendant to compel individual arbitration pursuant to the Customer Agreement. *Id.* at 565-66. The Ninth Circuit declined to compel arbitration, concluding that the plaintiff had not assented to the Customer Agreement and its incorporated arbitration provision merely by continuing to use the radio service after the Customer Agreement arrived in the mail. Because the defendant failed to notify plaintiff during his "initial transaction" with the company's service that plaintiff "was entering into an agreement" or "that his use of the . . . service bound him to the terms . . . he would later receive," the Ninth Circuit held that the defendant could not compel plaintiff to arbitrate pursuant to the Customer Agreement he later received. *Id.* at 567-568; *see also id.* at 566. Here, as in *Knutson*, Plaintiff was never notified that she "was entering into an agreement"

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

with Defendant when she initially enrolled in Wish.com on January 19, 2017, or that Plaintiff ever "understood that [her] use of the . . . service bound [her] to the terms . . . [she] would later receive." *Id*. at 567-568.  In fact, the Motion here has even less merit than the motion filed by the defendant in *Knutson,* because the defendant in *Knutson* actually mailed a copy of the agreement containing the arbitration provision to the plaintiff's physical address, whereas in this case Defendant merely included a hyperlink to the Terms of Service containing the subject arbitration provision in fine print at the bottom of its mobile application.

Simply put: no evidence exists objectively demonstrating that Plaintiff intended to be bound by the Terms of Service merely by using Defendant's mobile application to sign into her account on Defendant's mobile application or even by checking the box on the "order status" screen of the mobile application.  To conclude otherwise would impose upon Plaintiff a duty to "ferret out hyperlinks to terms and conditions to which [she] has no reason to suspect [she] is . . . bound" – precisely the duty that the Ninth Circuit has instructed courts <u>not</u> to impose on consumers. *See Nguyen*, 763 F.3d at 1179.  The Motion should be denied.[10]

### B.  Even If Plaintiff Assented to the Terms of Service, the Arbitration Provision in the Terms of Service Is Unconscionable and thus Unenforceable as a Matter of Law

Because the Motion fails to establish a valid contract to arbitrate, the Motion should be denied on that basis alone, and the Court need not address enforceability.  But even Plaintiff did assent to the Terms of Service, the Motion should still be denied because the arbitration provision at issue is unconscionable.

"Under California law, an arbitration agreement, like any other contractual clause, is unenforceable if it is both procedurally and substantively unconscionable." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010).  "[T]he core concern of unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109,

---

[10]     In the event the Court finds an issue of fact as to whether a valid, enforceable agreement to arbitrate exists in this case, Plaintiff hereby demands a trial by jury on the question pursuant to Section 4 of the FAA, 9 U.S.C. § 4.  *See, e.g.*, *Castillo*, 2013 WL 12143002, at *3-*4.

1145 (2013). "While both procedural and substantive unconscionability are required, 'they need not be present to the same degree.'" *Colvin v. NASDAQ OMX Group, Inc.*, 2015 WL 6735292, at *3 (N.D. Cal. 2015) (quoting *Pokorny*, 601 F.3d at 996). "Instead, a sliding scale is applied, such that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.*

The procedural unconscionability element "focuses on the factors of surprise and oppression in the contracting process, including whether the contract was one drafted by the stronger party and whether the weaker party had an opportunity to negotiate." *Pokorny*, 601 F.3d at 996. The substantive unconscionability element "focuses on whether the actual terms of the agreement create a "one-sided" result. *See Armendariz v. Found. Health Psychcare Servs, Inc.*, 24 Cal. 4th 83, 114 (2000).

In this case, Defendant seeks to compel arbitration pursuant to a provision that is both procedurally and substantively unconscionable. Defendant's arbitration provision is procedurally unconscionable because it was drafted by Defendant (the stronger party), without affording Plaintiff (the weaker party) any opportunity to negotiate its terms. Indeed, the entire Terms of Service, within contains the arbitration provision, was drafted by Defendant, a large, well-funded corporate entity with superior bargaining power, and imposed upon Plaintiff, a non-lawyer consumer who lacks any familiarity with contract law, on a take-it-or-leave-it basis via inconspicuous website hyperlinks. Such factual circumstances are, without more, sufficient to establish procedural unconscionability. *See Vargas v. Delivery Outsourcing, LLC*, 2016 WL 946112, at *9 (N.D. Cal. 2016) ("Under California law, contracts of adhesion are procedurally unconscionable"). Egregiously, Defendant failed to even "attach the arbitration rules" to the Terms of Service, thereby "den[ying] [Plaintiff] 'a fair opportunity to review the full nature and extent of the non-binding conciliation and binding arbitration processes to which [she] would be bound.'" *Vargas*, 2016 WL 946112, at *10 (quoting *Pokorny*, 601 F.3d at 996–97). "This failure 'multipl[ies] the degree of procedural unconscionability.'" *Id.*

The subject arbitration provision is also substantively unconscionable, for several reasons. First, the provision affords Defendant the right to "pick the pool of potential arbitrators." *See, e.g.,*

*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 924-25 (9th Cir. 2013).   Second, it provides no mechanism for Plaintiff to contest the "neutrality" of Defendant's chosen pool.   *See Beltran v. InterExchange*, 2017 WL 4418711, *7 (D. Colo. 2017).   Third, Defendant has specifically exempted from arbitration a cherry-picked group of claims that only Defendant, and certainly not consumers such as Plaintiff, would ever actually bring.[11] (*See* ECF No. 17-1 at p.13 (exempting only claims related to "actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights")).)   Finally, Plaintiff is prohibited from assigning, delegating, or transferring any of her rights or obligations under the Terms of Service without Defendant's prior written consent, yet Defendant is free to transfer, assign, or delegate any or all of its rights or obligations without Plaintiff's consent.   *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1180 (9th Cir. 2003).   Despite all these plainly one-sided provisions, Plaintiff is nonetheless forced to chip in half the cost of the arbitration. *See, e.g., Capili*, 116 F. Supp. 3d at 1008.

The Motion thus seeks to compel arbitration pursuant to Terms of Service "permeated" with quintessential examples of substantive unconscionability, "no single provision [of which] the [Court] can strike or restrict in order to remove the unconscionable taint[.]"   *Armendariz*, 24 Cal. 4th at 124. Accordingly, in the unlikely event the Court finds that Plaintiff assented to the Terms of Service, the Court should find the entire arbitration provision unconscionable and thus unenforceable by Defendant.   *See Ingle*, 328 F.3d at 1180.[12]

The Terms of Service are unconscionable, and the Motion should be denied.

## V.   CONCLUSION

For the foregoing reasons, the Motion should be denied.

---

[11]     Such provisions are unconscionable under California law. *See Colvin*, 2015 WL 6735292, at *5; *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 724 (2004); *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1007-1008 (N.D. Cal. 2015).

[12]     Because Defendant has failed to prove the existence of a valid, enforceable contract by which Plaintiff agreed to arbitrate, this proceeding is not "referable to arbitration" and thus no stay pending arbitration is warranted.   9 U.S.C. Section 3; *cf.* Mtn. at 12.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

1   Dated:  July 16, 2018                          Respectfully submitted,

2                                                          HEDIN HALL LLP

3
                                                         By: s/ David W. Hall
4
                                                         David W. Hall (SBN 274921)
5                                                        dhall@hedinhall.com
                                                         Frank S. Hedin (SBN 291289)
6                                                        fhedin@hedinhall.com
                                                         Four Embarcadero Center, Suite 1400
7                                                        San Francisco, California 94111
                                                         Telephone: (415) 766-3534
8                                                        Facsimile: (415) 402-0058

9
                                                         *Counsel for Plaintiff*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

## CERTIFICATE OF SERVICE

I, Frank S. Hedin, hereby certify that on July 16, 2018, I served the above and foregoing ***Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration and Stay Litigation*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

By:  s/ Frank S. Hedin
Frank S. Hedin

17