United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| SHARON MOTLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONTEXTLOGIC, INC., d/b/a Wish.com,<br><br>Defendant. | Case No. 3:18-cv-02117-JD<br><br>**ORDER RE MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 17 |
|---|---|

In this putative class action, plaintiff Sharon Motley alleges that defendant ContextLogic, Inc., violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending unsolicited SMS text messages to her cell phone. Dkt. No. 1. ContextLogic seeks to compel arbitration. Dkt. No. 17. The motion is denied.

## BACKGROUND

The parties agree on the salient facts. ContextLogic operates e-commerce websites including Wish.com, which appears to specialize in a bargain hunting experience for shoppers. Dkt. No. 1. Motley registered as a Wish.com user in January 2017. Decl. of Frost Li at ¶ 5, Dkt. No. 17-1; *see also* Dkt. No. 32 at 1. ContextLogic does not contend that the January 2017 interaction created an agreement to arbitrate.

Instead, ContextLogic focuses on a log-in screen Motley used in September 2017 to provide an email address and password. Dkt. No. 17 at 1-2; Dkt. No. 32 at 3. The log-in screen looked like this:



Dkt. No. 17-1, Exh. A.

ContextLogic also relies on an "Order History" screen that Motley accessed in October 2017. Dkt. No. 17-1 at ¶ 8. This screen included a box for a user to check if she wanted to receive "SMS updates about my delivery status and deals sent to [phone number]":



Dkt. No. 17-1, Exh. B.

As a final element, ContextLogic refers to other log-in screens that it says Motley accessed in March 2018. Dkt. No. 17-1 at ¶ 11. The screens looked like this:



Dkt. No. 17-1, Exh. C.

The parties agree that Wish.com's terms of service contain a clause providing for arbitration of disputes with a class-action waiver, and a choice of law provision designating California law. Dkt. No. 17-1, Exh. D.

**DISCUSSION**

The parties also agree that the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), governs ContextLogic's motion to compel. The main bone of contention is whether the parties formed an agreement to arbitrate their disputes. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [she] has not agreed so to submit." *Norcia v. Samsung Telecomm. Am., LLC*, No. 14-CV-00582-JD, 2014 WL 4652332, at *3 (N.D. Cal. Sept. 18, 2014) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)), *aff'd,* 845 F.3d 1279 (9th Cir. 2017). California state law governs the formation issue,

and ContextLogic bears the burden of "proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia*, 845 F.3d at 1283; *see also Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996). When determining whether a contract to arbitrate was formed, the usual policy favoring arbitration does not apply. *Norcia*, 2014 WL 4652332, at *4.[1]

The touchstone for the formation question is whether Motley and ContextLogic mutually consented to arbitration in lieu of going to court. *Norcia*, 845 F.3d at 1284; *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). They did not. The Court will assume for present purposes that Motley accessed all of the online screens that ContextLogic relies upon. Even so, the screens fall far short of evidencing an assent to arbitration. None of them presented the specifics of Wish.com's terms of service or required Motley to review the terms in conjunction with a request for agreement or acceptance. *See In Re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016). None of the screens asked Motley to click the equivalent of a "Sign Up" box of any sort that might indicate acceptance of the terms of service. *Id*. at 1166. The screens also did not provide any notice that merely using the website would be deemed acceptance of the terms of service. The only thing ContextLogic's screens featured was an unadorned hyperlink to the terms of service.

These facts put ContextLogic's screens squarely in the domain of the "browsewrap agreement" for purposes of determining formation and mutual assent. Browsewrap agreements are properly viewed with skepticism because they purport to create binding contracts on terms a user is not required to review, and in the absence of any affirmative manifestation of agreement by the user. *Id*. at 1165. ContextLogic effectively acknowledges the browsewrap nature of its screens by contending that Motley accepted the terms of service simply by accessing Wish.com. *See, e.g.*, Dkt. No. 35 at 3.

---

[1] While Section 4 of the FAA provides for a trial to resolve a formation dispute, *see Norcia*, 2014 WL 4652332, at *3, the material facts here are undisputed and ContextLogic did not ask for an evidentiary proceeding.

4

An agreement to arbitrate cannot be found on this record. ContextLogic suggests that making the terms of service accessible via a conspicuous hyperlink, without more, was enough to create an agreement. This theory has been definitively rejected in our circuit. A contract is not formed when "a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent." *Nguyen*, 763 F.3d at 1178-79. The burden is "on website owners to put users on notice of the terms to which they wish to bind" them, and not on consumers "to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Id*. at 1179. A "failure to read" defense does not supply the missing elements of notice and assent, as ContextLogic suggests. *Id*. In the absence of evidence demonstrating actual or constructive notice and acceptance of the arbitration clause by Motley, ContextLogic's motion must be denied.

ContextLogic puts substantial emphasis on the fact that the "Order History" screens featured a box asking if the user would like to receive text messages from Wish.com, along with an asterisked statement that "Messages and data rates may apply. Click here for more details." Dkt. No. 17 at 10; Dkt. No. 35 at 3-4. ContextLogic highlights the fact that "here" was a hyperlink to the terms of service. In ContextLogic's view, the imperative mood of the screen language and the presence of the hyperlink were enough to put Motley on notice that she was subject to the terms of service. That again goes too far. The "Order History" screen is substantively indistinguishable from the log-in screen, and so faces the same fate under *Nguyen*. If anything, it is even less susceptible to binding Motley to the terms of service because "here" is used in connection with the "more details" language that is most readily understood as referring to possible message and data charges for users opting to get text communications, and not to the terms of service.

The parties dispute whether Motley in fact checked the box to accept text messages, but that is of no moment for the arbitration motion. If the evidence ultimately shows that Motley agreed to receive the messages, a good argument might be made that she is not well-positioned to bring a TCPA claim. That question, however, is not germane to the issue of whether she agreed to

arbitration. Even assuming purely for discussion that she did check the box, it would not establish a meeting of the minds on the arbitration clause.

## CONCLUSION

The motion to compel arbitration is denied.

**IT IS SO ORDERED.**

Dated: November 9, 2018

JAMES DONATO
United States District Judge